UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PAMELA BURKHARDT,<br><br>Plaintiff,<br><br>v.<br><br>SWEDISH HEALTH SERVICES, INC., a Washington nonprofit corporation, dba SWEDISH MEDICAL CENTER; and SUSAN TERRY, individually and her marital community,<br><br>Defendants. | NO. 2:17-cv-00350-RSL<br><br>**ORDER OF REMAND** |

THIS MATTER comes before the Court on "Plaintiff's Motion for Order of Remand and Award of Attorney's Fees." Dkt. # 10. Plaintiff alleges that she was assaulted by her supervisor at work, that she was retaliated against when she reported the assault, and that she was constructively discharged. Plaintiff asserts claims of negligent infliction of emotional distress, breach of promise of specific treatment in specific circumstances, breach of contract, and wrongful discharge in violation of public policy. Plaintiff's breach of promise and breach of contract claims are based on unspecified "written and oral statements to plaintiff." Dkt. # 1-2 at ¶ 5.2 and ¶ 6.2. In

ORDER OF REMAND -- 1

her motion for remand, plaintiff clarifies that these claims are not based on the terms of the collective bargaining agreement ("CBA"), but rather on state law as it applies to the employer's policies and handbooks.

Defendant Swedish Health Services, Inc., removed this matter to federal court on the ground that plaintiff's claims, and in particular the breach of promise and breach of contract claims, are preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Section 301(a) provides: "Suits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." The section has been interpreted as a congressional mandate for the application of federal common law to any dispute arising out of a labor contract. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209 (1985). Although § 301 is arguably little more than a venue provision, the United States Supreme Court concluded that "in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules." Teamsters v. Lucas Flour Co., 369 U.S. 95, 104 (1962). The need for uniformity means that "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles – necessarily uniform throughout the Nation – must be employed to resolve the dispute."

Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988). See also Allis-Chalmers, 471 U.S. at 210-11 (any claim that alleges a breach of a labor agreement or that would require a determination regarding the meaning or scope of a term of a CBA must be brought under § 301 and resolved pursuant to national labor policy). If, however, plaintiff seeks to vindicate substantive rights in the labor context that do not involve interpretation of a CBA, the claims are not preempted. Mere overlap in the remedies available under the CBA and state law "does not make the existence or the contours of the state law violation dependent upon the terms of the private contract . . . In the typical case a state tribunal could resolve either a discriminatory or retaliatory discharge claim without interpreting the 'just cause' language of a collective-bargaining agreement." Lingle, 486 U.S. at 412-13.

**A. BREACH OF PROMISE AND BREACH OF CONTRACT**

The Court takes as true and binding plaintiff's representation that her breach of promise and breach of contract claims are not based on the CBA, but rather on "Swedish's promises set forth in its employee policies applicable to all employees, union and non-union . . . ." Dkt. #10 at 15. See also Dkt. #10 at 20. Defendant nevertheless argues that the claims necessarily require interpretation of the CBA, relying on Swinford v. Russ Dunmire Oldsmobile, Inc., 82 Wn. App. 401 (1996). In that case, the employer promised to give Swinford a leave of absence when he was injured in a motorcycle accident as long as he reported to work by a certain date. The agreement was memorialized in a letter and was based on a handbook issued by the

employer. 82 Wn. App. at 405-06. When Swinford timely notified the employer that he was ready to come back to work, the employer terminated his employment, stating that it had found a better, more productive employee to take his place.

Swinford's employment was generally governed by the terms of a CBA, but his claim was based on an agreement and handbook that were separate from the CBA. Nevertheless, the state court concluded that "we must rule against Swinford to protect the rights of all union workers under CBAs. We refuse to set a precedent that allows employers to disregard CBAs and enter into separate contracts with individual union members." 82 Wn. App. at 407. This part of the state court's opinion is an assertion that anyone covered by a CBA cannot, as a matter of federal labor policy, bring a state law action on a separate, independent agreement with the employer because allowing such agreements would dilute the power of collective action. This is simply not the law. Section 301 "says nothing about the content or validity of individual employment contracts." Caterpillar Inc. v. Williams, 482 U.S. 386, 394-95 (1987). Long before Swinford was decided, the United States Supreme Court expressly found that "a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement." Id. at 396 (emphasis in original). The Washington Supreme Court has similarly held that "[t]he fact that an employee is covered by a collective bargaining agreement does not always, as a matter of law, bar the employee from bringing a claim of breach of promise of specific

treatment in specific situations." Korslund v. DynCorp Tri-Cities Servs., Inc., 156 Wn.2d 119, 184 (2005). To the extent Swinford can be read as invalidating or preempting all contracts between an employer and an employee simply because the employee is covered by a CBA, the Court rejects that analysis as inconsistent with controlling law.

The Swinford court goes on to analyze the terms of the CBA. After noting that the CBA said it was "the full and complete Agreement between the parties hereto and for all for whose benefit this Agreement is made," the court concluded that that provision would have to be interpreted in order to determine whether plaintiff's separate leave of absence agreement was enforceable. 82 Wn. App. at 411. Even if that were a correct application of the law, defendant has not identified a similar provision in its agreement with the union. Article 22.4 of the CBA, on which defendant relies, states only that the union and the employer have reached an agreement and waive the right to bargain collectively regarding matters not included in the CBA. Unlike the provision in Swinford, the CBA in this case does not prohibit or waive agreements between the employer and its individual employees.[1]

---

[1] Defendant's reliance on Jonassen v. Port of Seattle, 2014 WL 2611287 (W.D. Wash. June 10, 2014), is similarly misplaced. On appeal, the Ninth Circuit determined that § 301 preemption was not applicable because the defendant was a political subdivision. Jonassen v. Port of Seattle, __ Fed. Appx. __, 2017 WL 1149116, at *1 (9th Cir. Mar. 28, 2017). The breach of handbook claim was dismissed on the merits because Jonassen could not establish a promise of specific treatment in specific situations.

More fundamentally, the fact that the Swinford court ultimately determined that plaintiff's claim was preempted does not help defendant in this case. A defendant might ultimately prove in the state court proceeding that a plaintiff's claim is preempted under § 301, but that does not establish that it would necessarily be removable to federal court. Caterpillar, 482 U.S. at 398. Removal jurisdiction arises only if plaintiff could have asserted a federal claim based on the allegations of her complaint. 28 U.S.C. § 1441. Unless federal law "both completely preempt[s] the state law claim and supplant[s] it with a federal claim," preemption is merely a defense to be raised in plaintiff's chosen forum. Young v. Anthony's Fish Grottos, 830 F.2d 993, 997 (9th Cir. 1987).

The question, then, is whether plaintiff's breach of promise and breach of contract claims allege violations of the CBA, seek to enforce individual contracts that are inconsistent with the CBA, or require a determination regarding the meaning or scope of a term of a CBA. Allis-Chalmers, 471 U.S. at 210-11; Chmiel v. Beverly Wilshire Hotel Co., 873 F.2d 1283, 1285 (9th Cir. 1989). Plaintiff is not asserting a violation of the CBA, and defendant has not identified any inconsistency between the alleged promises and the CBA. Defendant contends that consideration of plaintiff's policy and handbook claims will require a determination regarding the meaning or scope of the CBA, but the basis for that contention is unclear. Defendant lists a number of provisions in the CBA that touch on safety and health issues (Article 17.4), discipline (Article 6.3), and applying for and notifying managers of intra-campus

transfers (Articles 6.9 and 6.10). Defendant also quotes at length the "Management Rights" provision of the CBA, which grants the employer the right to impose standards of performance and maintain order and efficiency in the workplace. Dkt. #15. Plaintiff's breach claims will turn on proof of an enforceable promise – independent of the CBA – and its breach. The terms and nature of the promise/contract do not depend on any provision of the CBA: whether an enforceable contract exists and the appropriate remedies will be determined with reference to state law principles. Nor does defendant plausibly assert that the breach of promise or breach of contract claims are inconsistent with the management rights provision or the provision mandating a "safe and healthful work place in compliance with Federal, State and local laws applicable to the safety and health of its employees."[2] Even if defendant intends to refer to these provisions as justification for the conduct alleged by plaintiff, there is simply no risk that the state court would interpret them in a way that could threaten the uniformity of national labor law. Arguments regarding the legality or enforceability of the individual employment contract, exclusive representation principles of the NLRA, and/or the existence of unfair labor practices can and should be raised in state court as a defense to the claim. Caterpillar, 482 U.S. at 397-98.

---

[2] The independence of plaintiff's contract claim is not destroyed simply because the CBA incorporates by reference existing federal, state, and local health and safety laws. The incorporation does not require the interpretation of the CBA as much as the underlying laws. Paige v. Henry J. Kaiser Co., 826 F.2d 857, 863 (9th Cir. 1987). The Ninth Circuit has determined that "allowing an employer to avoid the effects of state laws by this type of incorporation would subvert congressional intent for the NLRA to coexist with state laws which set labor standards." Id. (citing Metro, Life Ins. Co. v. Mass., 471 U.S.724, 756 (1985)).

> It is true that when a defense to a state claim is based on the terms of a collective-bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives. But the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule – that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court.

Caterpillar, 482 U.S. at 398-99. Plaintiff's breach of promise and breach of contract claims do not require interpretation of the CBA. At most, the state court may have to refer to or consider the CBA, but that is not enough to trigger complete preemption. Kobold v. Good Samaritan Reg'l Med. Ctr., 832 F.3d 1024, 1033 (9th Cir. 2016).

**B. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

Plaintiff's claim of negligent infliction of emotional distress is based on duties arising solely out of state law. Defendant Terry is alleged to have physically assaulted plaintiff, and defendant Swedish is accused of mishandling her complaint, retaliating, and constructively discharging plaintiff in violation of public policy. Evaluating the source of the duties and the facts related to breach will not require reference to, much less interpretation of, the CBA. Even if plaintiff, as a member of the bargaining unit, had substantial rights under the CBA and could have brought suit under § 301, she remains master of her complaint and chose not to do so. Caterpillar, 482 U.S. at 395.

Unlike the situation in Stallcop v. Kaiser Found. Hosps., 820 F.2d 1044, 1049 (9th Cir. 1987), plaintiff's claim does not arise from the application of the disciplinary processes set forth in the CBA. This case is more like Tellez v. Pac. Gas & Elec., 817

F.2d 536 (9th Cir. 1987), in which a manager distributed an allegedly defamatory letter within the workplace accusing plaintiff of buying cocaine and suspending him without pay for ten days. The court found that the defamation claim "neither asserts rights deriving from the collective bargaining agreement, nor requires interpretation of the agreement's terms." Id. at 538. Given the nature of plaintiff's emotional distress claim and the allegations of the complaint, there is no dispute regarding the meaning of the CBA. In such circumstances, "the fact that a CBA will be consulted in the course of state law litigation does not require preemption." Ward v. Circus Circus Casinos, Inc., 473 F.3d 994, 998 (9th Cir. 2007).

**C. WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY**

Plaintiff alleges that defendants breached Washington's public policies shielding employees from workplace violence, harassment, and retaliation. "Section 301 does not preempt every public policy claim brought by an employee covered by a collective bargaining agreement. Thus, a claim is not preempted if it poses no significant threat to the collective bargaining process and furthers a state interest in protecting the public transcending the employment relationship." Young, 830 F.2d at 1001. The policies on which plaintiff relies benefit employees "as individual workers, not because they are or are not members of a collective bargaining association." Paige, 826 F.2d at 863. Because the resolution of plaintiff's wrongful discharge claim depends upon an analysis of state public policy and defendants' conduct, it is not intertwined or substantially dependent on the CBA and is not preempted by § 301.

For all of the foregoing reasons, plaintiff's motion for remand is GRANTED. Plaintiff's claims do not arise out of the CBA and will not require more than a passing reference to its terms. Plaintiff alleges that her supervisor assaulted her and that, when she reported the assault, she was harassed and retaliated against in violation of state tort law and promises made by the employer that were independent of the CBA. If these facts are proven, plaintiff will have established the elements of her various causes of action without reference to the CBA. If defendants have a collectively-bargained defense, it may be asserted in state court. Plaintiff's claims, as clarified in her motion, could not have been originally filed in federal court and are not subject to removal under § 301.

Plaintiff's request for an award of fees is DENIED. Her breach of contract claim was stated in such a way that it was not clear at the time of removal whether it was based in part on the CBA. Given that ambiguity, removal was not unreasonable. Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).

Dated this 16th day of May, 2017.

*ROBERT S. LASNIK*
ROBERT S. LASNIK
United States District Judge